IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:17cr6-MHT |
| | ) | (WO) |
| MATTHEW ELLIOTT SHASHY | ) | |

OPINION

Defendant Matthew Elliott Shashy fired three blasts of a shotgun into the ground at a busy intersection at the entrance to Maxwell Airforce Base in Montgomery, Alabama. Base employees were manning a guard shack within sight and sound of where he fired the weapon. He was indicted, and a jury found him gulty, of forcibly impeding, intimidating, or interfering with a member of the uniformed services while that person was engaged in official duties, and doing so with a deadly and dangerous weapon. *See* 18 U.S.C. § 111(a) & (b).

Prior to trial, Shashy filed notice pursuant to Federal Rule of Criminal Procedure 12.2(b) that, without asserting an insanity defense, he intended to introduce expert testimony "relating to a mental

condition of the defendant bearing on the issue of guilt." Notice (doc. no. 61). Specifically, he wished to have a psychologist testify to her opinion of his mental state at the time of the offense in an effort to prove that his intent in firing the weapon was other than the intent required for the offense. The government opposed admission of the evidence. After hearing the expert's proposed testimony outside the presence of the jury, the court excluded the evidence because the testimony did not negate the *mens rea* for the offense and because its probative value was substantially outweighed by the danger of confusing or misleading the jury. The court issues this opinion to explain its reasoning more completely.

I.

Shashy sought to introduce expert testimony as to his mental state at the time of the offense in order to show that his intent was other than the intent required for conviction under the statute. The statute under

which he was charged, 18 U.S.C. § 111, provides in part:

> "(a) In general.--Whoever--
>
> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; ...
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both. ...
>
> "(b) Enhanced penalty.--Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon ... shall be fined under this title or imprisoned not more than 20 years, or both."

The parties agreed that § 111 is a general-intent crime. *See United States v. Ettinger*, 344 F.3d 1149, 1155 (11th Cir. 2003). Therefore, § 111 "only requires the knowing commission of the act." *Id.* at 1158. Put another way, "[i]n order to incur criminal liability under § 111, [Shashy] must 'entertain merely the criminal intent to do the acts' specified in § 111, to forcibly assault, resist, oppose, impede, intimidate or interfere with a federal officer 'while engaged in or

on account of the performance of official duties.'" *Id.* at 1155 (quoting *United States v. Feola*, 420 U.S. 671, 686 (1974)).

Shashy sought to introduce the testimony of a psychologist to show that, in firing his weapon, his intent was not to forcibly assault, resist, oppose, impede, intimate, or interfere with the airbase's employees, but instead was to call attention to the government's persecution of his family. The psychologist would have attested that he suffered from delusion of government persecution as a result of mental illness, and that he genuinely believed that he needed to call attention to the government's activity in order to protect his family.

## II.

There are two relevant situations in which expert psychological evidence of the defendant's mental illness may be admitted: when the defendant raises the insanity defense, and when the defendant seeks to

4

negate the *mens rea* the government is required to prove as an element of the charged offense.

The insanity defense is an affirmative defense that presupposes that the government can prove all elements of the offense beyond a reasonable doubt, but relieves the defendant of responsibility for the offense on account of his mental illness. *See United States v. Lawson*, 459 F. Supp. 2d 1192, 1195–96 (M.D. Ala. 2006) (Thompson, J.). Under the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4247, a defendant may be found not guilty by reason of insanity only if, after the government proves all the elements of the charged offense beyond a reasonable doubt, the defendant proves by clear and convincing evidence that, "as a result of a severe mental disease or defect, he was unable to appreciate the nature and quality or wrongfulness of his acts." 18 U.S.C. § 17.

Shashy expressly stated to the court that he did not wish to raise the affirmative defense of insanity. *See* Order of April 26, 2017 (doc. no. 46) (finding that

Shashy "has knowingly and voluntarily waived the insanity defense"). Instead, as discussed above, he took the tack of challenging the government's ability to prove a necessary element of the offense: *mens rea*. The Eleventh Circuit Court of Appeals has summarized the distinction between these approaches as follows: "'Affirmative defense' evidence of mental impairment, when specifically recognized and defined by the legislature, must be raised by the defendant and can 'justify' or 'excuse' conduct that is otherwise criminal." *United States v. Cameron,* 907 F.2d 1051, 1063 (11th Cir. 1990) (internal citation omitted). "Psychological evidence that aids the trier in determining the defendant's specific state of mind with regard to the actions she took at the time the charged offense was committed, by contrast," the court continued, "is not an affirmative defense but is evidence that goes specifically to whether the prosecution has carried its burden of proving each

essential element of the crime--at least when specific intent is at issue." *Id.*

In *Cameron*, the Eleventh Circuit held that the Insanity Defense Reform Act, which codifies and limits the insanity defense in federal criminal trials, does not prohibit the defendant from introducing psychiatric evidence to rebut the *mens rea* element of the charged offense. 907 F.2d at 1066. This court, therefore, rejects the government's broad argument that, under that act, Shashy's evidence of mental illness was inadmissible because it was not offered in the context of an insanity defense.

However, the appeals court, in holding that psychiatric evidence is admissible to negate intent, was careful to place strict limits on the kind of evidence that could support such a defense theory. Psychiatric evidence tending to negate intent must show not merely that the defendant was unable to reflect properly on, or control, her actions or motivations; "a lack of conscious self-reflection does not mean a lack

of intent." *Cameron*, 907 F.2d at 1066 n. 30. Rather, the psychiatric evidence must focus on the defendant's specific state of mind at the time of the offense and show that, because of the defendant's mental condition, he did not have the specific intent necessary to commit the crimes charged. *Id*. at 1067. "Only in the rare case" will a defendant be so incapacitated by mental disease or defect so as to negate the *mens rea* element of the crime. *Cameron*, 907 F.2d at 1066. Indeed, as Judge Becker stated on behalf of the Third Circuit Court of Appeals, "Mental illness rarely, if ever, renders a person incapable of understanding what he or she is doing. ... [A] man who commits murder because he feels compelled by demons still possesses the *mens rea* required for murder. The government's burden of proving *mens rea* is therefore considerably less onerous than its previous burden of proving sanity." *United States v. Pohlot*, 827 F.2d 889, 900 (3rd Cir. 1987) (citation and quotation marks omitted). "[P]urposeful activity is all the law requires." *Id.* at 907.

The Eleventh Circuit has, therefore, cautioned: "Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury[] from focusing on the actual presence or absence of *mens rea*, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, ... district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of *mens rea*." *Cameron*, 907 F.2d at 1067 (internal quotation marks omitted).

III.

As noted, the discussion in *Cameron* was limited to the use of psychiatric evidence to negate a specific-intent offense, and the statute at issue here requires only a showing of general intent. Shashy argued that that the language limiting admissibility of psychiatric evidence to specific-intent offenses in

9

*Cameron* was dictum and that this court should hold the expert testimony he proffered admissible to negate *mens rea* in this case.[1]

---

1. Shashy may be correct that there is no blanket rule prohibiting the admission of psychological evidence to negate *mens rea* for general-intent offenses, or that if there is one, it is in error. As the Sixth Circuit Court of Appeals has held, psychological evidence may be admissible to negate *mens rea* for a general-intent crime where the evidence goes to the existence of knowledge. *See United States v. Odeh*, 815 F.3d 968 (6th Cir. 2016). In *Odeh*, a defendant was charged with knowingly procuring naturalization contrary to law. *Id*. at 973. Specifically, when applying for citizenship, she represented that she had never been arrested, when in fact, she had been arrested in Israel for involvement in a bombing and served ten years in prison. *Id*. at 974. At trial, she sought to introduce psychological evidence of her post-traumatic stress disorder to prove that she did not know that her statements were false. *Id*. at 973. The district court excluded the evidence under the blanket rule that psychological evidence is never admissible to negate *mens rea* for a general-intent crime.

The appeals court reversed, explaining that the district court should not have excluded the expert testimony based on "the supposed categorical rule" applicable to general-intent offenses. The psychological evidence did "not suggest that [the defendant] felt compelled to commit a crime, but rather that [the defendant] did not know that her answers on the naturalization application were false." *Id*. at 979. As the court explained, "The Third Circuit has provided helpful insight into why cases like Odeh's

However, this court did not need to resolve that issue because, even if *Cameron* does not establish a categorical rule prohibiting the admissibility of expert testimony to negate *mens rea* in all prosecutions for general-intent offenses, the proffered expert testimony here did not tend to negate *mens rea* and was not admissible under the circumstances presented in this case.

IV.

Shashy argued that the government needed to prove that he acted with the intent forcibly to intimidate, resist, or impede government employees, and sought to

---

arise infrequently. According to that court, '[m]ost states ... limit psychiatric evidence to specific intent crimes on the theory that mental abnormality can virtually never disprove the *mens rea* required for general intent crimes.' *Pohlot*, 827 F.2d at 897 n.4." *Odeh*, 815 F.3d at 979. In *Odeh*, however, the expert's testimony potentially negated the general-intent element of offense, so the cases holding psychological evidence inadmissible in general-intent offenses did not control. *Id*. at 976-77. The psychological evidence did "not suggest that [the defendant] felt compelled to commit a crime, but rather that [the defendant] did not know that her answers on the naturalization application were false." *Id*. at 979.

11

introduce expert psychological testimony to negate that element of the offense.  However, having reviewed the expert's report and heard the proffered testimony of the expert, this court concluded that the expert testimony would have not have 'negated' *mens rea*.

The proffered evidence did not show that Shashy lacked the required intent at the time of the offense. On the contrary, the evidence lended support to the argument that he did have the required intent.  The expert testified that, while he was motivated by delusions that the government was persecuting him and his family, Shashy knew what he was doing: he knew that he was firing a gun in front of the airbase gate; that it was illegal to do so; and that, if he fired the gun, he was going to scare people.  This evidence would have done nothing to negate the intent required for the offense: that he knowingly intimidated base employees by use of force.

Shashy argued that the evidence showed that his intent in firing the weapon was to call attention to

what he believed was the government's persecution of him and his family. However, his desire to call attention to his plight does not disprove that he knowingly and willfully intimidated or interfered with personnel on the base by use of force; the two states of mind are entirely consistent with each other. Put another way, Shashy could have intended both to call attention to his plight *and* to intimidate or interfere with the people working on the base; indeed, the expert evidence tended to show that he did the latter as means to achieving the former. In sum, the expert evidence did not negate the intent element of the charged offense.[2]

---

2. Shashy argued summarily that the constitutional right to present a defense required admission of the expert testimony in his case. As the Sixth Circuit explained in *Odeh*, 815 F.3d at 977, "Because the Government must prove every element of a crime beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 363-64 ... (1970), a defendant's right to present a defense 'generally includes the right to the admission of competent, reliable, exculpatory evidence' to negate an element of the offense...." Here, however, as the evidence did not negate an element of the crime and accordingly was not exculpatory, Shashy had no constitutional right to its admission.

To be admissible, the expert testimony about Shashy's mental illness must first be probative, Fed. R. Evid. 702, and then, even if probative, must be weighed against the danger that such testimony will confuse the issues or mislead the jury; if the probative value of the evidence is substantially outweighed by that danger, it may be excluded. Fed. R. Evid. 403.

Here, the probative value of the evidence would have been substantially outweighed by the danger that the testimony would confuse the issues or mislead the jury. Fed. R. Evid. 403. As the expert's testimony would not have demonstrated that Shashy lacked the intent required for the offense, it had little probative value in terms of supporting Shashy's defense theory. Instead, the thrust of the testimony was to present a justification for Shashy's actions, an affirmative defense not raised in this case. As the Eleventh Circuit warned, "district courts must examine such psychiatric evidence carefully to ascertain

whether it would, if believed, support a legally acceptable theory of lack of *mens rea*" because psychological evidence "presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of *mens rea* [and] may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." *Cameron*, 907 F.2d at 1067 (internal quotation marks omitted). The proffered testimony that Shashy acted out of a genuine--albeit misguided--desire to protect his family from government persecution raised both of these concerns. It raised a serious threat of distracting the jury from the issue of whether he knowingly interfered, impeded, or intimidated federal employees by use of force, and would have improperly brought the issue of 'justification' into the case. In addition, given the testimony's focus on Shashy's fixed delusional beliefs, admission of the testimony would have posed serious risk that the jury might have been confused as to the relevance of the defendant's mental

illness, and the extent to which it legally 'excused' his conduct. By admitting the evidence, the court in effect would have allowed Shashy to raise an insanity defense without following the strict procedural requirements applicable to such an offense under federal law. This the court would not do.

Accordingly, the court excluded, at trial, Shashy's expert testimony relating to his mental illness. However, whether it will be relevant at sentencing is a separate question.

DONE, this the 11th day of December, 2017.

/s/ Myron H. Thompson  
**UNITED STATES DISTRICT JUDGE**